## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D.L., *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | )   **No. 00-2439-CM** |
| | ) |
| UNIFIED SCHOOL DISTRICT NO. 497, | ) |
| DOUGLAS COUNTY, KANSAS, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
|  | ) |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs brought this case regarding the education of minor children, J.L. and R.L., against defendants.  The case is before the court on the parties' supplemental briefing about the status of plaintiffs' claims after this court granted summary judgment and the Tenth Circuit remanded for lack of jurisdiction.  This court now has jurisdiction and considers defendants' summary judgment request.

I.      **Background**

The facts and history of this case are lengthy.  This court's September 17, 2002 Memorandum and Order (Doc. 168)—*D.L. v. Unified Sch. Dist. No. 497*, 270 F. Supp. 1217, 1246–52 (D. Kan. 2002)—and the Tenth Circuit's opinion (Doc. 257)—*D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1226–27 (10th Cir. 2004) provide detailed accounts.  The relevant facts can be summarized.

On April 18, 2000, defendants sued a plaintiff, the mother of J.L. and R.L., for fraud related to the autistic children attending school in the district despite not living in the district ("the state

case").  On September 29, 2000, plaintiffs filed the present action for removing the children from the

school, asserting claims under: (1) the Individuals with Disabilities Education Act ("IDEA"); (2) the

Rehabilitation Act; (3) the Americans with Disabilities Act ("ADA"); (4) § 1983 for violation of due

process and equal protection under the Fourteenth Amendment; and (5) invasion of privacy under

Kansas law.  On September 17, 2002, this court granted summary judgment for defendants on

plaintiffs' claims under the Rehabilitation Act, the ADA, § 1983, and invasion of privacy.  (Doc.

168).  On July 25, 2003, the court granted judgment for the defendants on the IDEA claim.  (Doc.

242)

On December 27, 2004, the Tenth Circuit affirmed in part and reversed in part.  The Tenth

Circuit affirmed this court's judgment against plaintiffs' claim under the IDEA for the denial of a

due-process hearing;[1]  however, the circuit court vacated the judgments regarding the ADA,

Rehabilitation Act, and the § 1983 claims for lack of jurisdiction.  Under the *Younger* abstention

doctrine, this court did not have jurisdiction because of the potential for interference with issues that

were being litigated in the state case.  Plaintiffs did not appeal the judgment regarding the invasion

of privacy claim.

Following the Tenth Circuit's mandate, on February 7, 2005, this court noted that the

Tenth Circuit affirmed its holdings regarding the IDEA based on the alleged denial of a due-process

hearing, but stayed the other appealed claims pending resolution of the state court action.  The court

---

[1]  The Tenth Circuit stated that this court lacked jurisdiction over a portion of plaintiffs' IDEA claim: "Plaintiffs may, however, be contending that the substantive harm is the state-court suit to recover the cost of educating the children; they say that the suit was 'the ultimate result' of the denial of the due-process hearing. . . .  But to the extent that Plaintiffs raised this contention below, *Younger* deprived the district court of jurisdiction to resolve it."  392 F.3d at 1232.  Similarly, this court lacked jurisdiction to resolve plaintiffs' contention that the state case violated the IDEA independently from the denial of the due-process hearing.  *Id.*

dismissed the vacated claims that sought equitable relief.  (Doc. 258).

On March 7, 2006, the state case was dismissed on motion by defendants.  As a result, this court lifted the stay on March 22, 2007 (Doc. 262).

On October 3, 2007, the parties filed a Stipulation Regarding Status of Claims (Doc. 265). The parties agreed "that the following claims remain for resolution by the Court: (1) [p]laintiffs' claims under § 504 of the Rehabilitation Act . . .; (2) plaintiffs' claims under the [ADA]; and (3) plaintiffs' claims under the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution [under 42 U.S.C. § 1983, § 1988]."  (Doc. 265, at 2).  The parties do not agree on whether plaintiffs have any remaining IDEA claims.

On October 31, 2007, defendants submitted their Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. 268).  Defendants argue that R.L. and J.L. are not entitled to declaratory or injunctive relief.  R.L. is now deceased.  J.L. has graduated from high school.  Moreover, defendants argue plaintiffs "never applied for admission under [defendants'] nonresident admissions policy."  (Doc. 268, at 2).  Defendants base this assertion on a submitted declaration from Rick Gammill, director of Special Operations for Unified School District No. 497, that states the district maintains a database of persons who have applied for admission to the district as non-residents for the relevant time period and that a search of that database found no record of plaintiffs' application for non-resident admission.  (Doc. 268, Ex. 1).  Additionally, defendants argue that plaintiffs' IDEA claim is meritless.  Defendants then raise again arguments they asserted in their initial briefing on plaintiffs' Rehabilitation Act claim, the ADA claim, and the Substantive Due Process and Equal Protection claim by specific reference.

Also on October 31, 2007, plaintiffs submitted their Supplemental Brief on Pending Issues. (Doc. 269).  First, plaintiffs argue that they have standing to pursue the Rehabilitation Act claim and

the ADA claim.  Plaintiffs  acknowledge that "the court concluded that because plaintiffs claimed to be residents of the school district, they lacked standing to assert claims based on the defendants' non-resident admission policy."  (Doc. 269, at 2).  Plaintiffs also concede that "throughout this litigation plaintiffs have asserted and continue to assert that they were residents of the defendant school district."  *Id.*  But plaintiffs contend "assuming *arguendo* that they were not residents, their rights were still violated by defendants' conduct."  *Id.*  Without citation to an exhibit or previous filing, plaintiffs state, "In the winter of 2000, after defendants had initially denied R.L. and J.L. access to its schools . . . plaintiffs' then counsel requested, [among other things], that R.L. and J.L. be admitted to the school district as non-residents."  *Id.*

Second, plaintiffs argue that defendants' actions violated the Rehabilitation Act, entitling plaintiffs to declaratory relief.  Third, plaintiffs argue that defendants' actions violated the ADA, also entitling plaintiffs to declaratory relief.  Fourth, plaintiffs argue that summary judgment is warranted on their Substantive Due Process and Equal Protection claims.  Plaintiffs contend that because defendants infringed on plaintiffs' right to travel, the court should analyze defendants' actions under strict scrutiny.  Alternatively, plaintiffs request the court analyze defendants' actions under intermediate scrutiny because defendants infringed on plaintiffs' right to education.

Lastly, plaintiffs argue that the court should not grant summary judgment for defendants on plaintiffs' Procedural Due Process claim.  In the September 17, 2002 Memorandum and Order, this court granted summary judgment for plaintiffs on a Procedural Due Process claim.  On reconsideration, however, this court found that plaintiffs had not asserted a Procedural Due Process claim in the pretrial order.  Plaintiffs contend that "as the Tenth Circuit's determination that this Court previously lacked jurisdiction over plaintiffs' due process claims eliminates the formerly entered pretrial order as a bar to plaintiffs' claims as the pretrial order was essentially vacated by the

Tenth Circuit's decision." *Id.* at 10.  Plaintiffs also cite Fed. R. Civ. P. 16(e), addressing manifest

injustice, and Fed. R. Civ. P. 15(b).

## II.    Judgment Standards

The present filings request summary judgment and supplement prior motions for summary

judgment.  Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences

therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the

proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational

trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of

material fact and entitlement to judgment as a matter of law.  *Id.* at 670–71.  In attempting to meet

that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate

the other party's claim; rather, the movant need simply point out to the court a lack of evidence for

the other party on an essential element of that party's claim.  *Id.* at 671 (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set

forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256; *see

Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).  The nonmoving

party may not simply rest upon its pleadings to satisfy its burden.  *Anderson*, 477 U.S. at 256.

Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.  Analysis

The court begins by addressing what claims remain active. The parties stipulated that claims under the Rehabilitation Act, the ADA, Substantive Due Process and Equal Protection under the Fourteenth Amendment remained active. The parties could not agree as to whether claims for declaratory relief for J.L. or the Estate of R.L. remained active. The stipulation also stated that the parties could not agree on whether any IDEA claim remained active, noting "[w]hether such claims remain, and if so, whether plaintiffs are entitled to relief thereunder, shall be addressed through supplemental briefing." (Doc. 265, at 2). The stipulation makes no mention of any procedural due process claim.

This court has broad discretion in whether to enforce a parties' stipulation. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1116 (10th Cir. 2005) (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1098 (10th Cir. 1991)). Generally, stipulations are "routinely accepted" because they increase judicial efficiency and are considered to be judicial admissions. *Id.* Here, the history of this case is lengthy. The parties are well acquainted with the issues and claims. The court conducted a telephone conference instructing the parties to discuss and provide information regarding the pending claims. Moreover, the stipulation identifies areas where the parties could not

agree.  Based on this, the court finds that the parties entered into the stipulation knowingly.  The court accepts and enforces the stipulation.

**A.      Procedural Due Process**

Plaintiffs attempt to assert a procedural due process claim.  Neither the stipulation nor the pretrial order references a procedural due process claim.  Plaintiffs' unsupported arguments that the Tenth Circuit's decision implicitly vacated the pretrial order, or that amendment of the pretrial order is necessary to prevent manifest injustice, do not override the omission of the claim in the stipulation.  Plaintiffs' citation to Fed. R. Civ. P. 15(b) is insufficient to meet the requirements of an appropriate motion to amend.  *See* D. Kan. R. 15.1.  Consequently, plaintiffs waived any procedural due process claim.

**B.      IDEA**

It is unclear whether plaintiffs continue to assert an IDEA claim.  The Tenth Circuit affirmed this court's decision to deny relief on plaintiffs' claims that defendants' denial of a due-process hearing was an actionable violation of the IDEA.  Plaintiffs failed to allege any substantive educational harm.  On the other hand, the Tenth Circuit also stated:

> Plaintiffs may, however, be contending the substantive harm is the state-court suit to recover the cost of educating the children. . . .  But to the extent that Plaintiffs raised this contention below, *Younger* deprived the district court of jurisdiction to resolve it.  The state suit would constitute an injury only if it lacked merit . . . So, too, for Plaintiffs' remaining contention—that the state-court suit violated the IDEA independently of the denial of the due-process hearing.

392 F.3d at 1232.  In response, the stipulation indicated that whether IDEA claims remain "shall be addressed through supplemental briefing."  (Doc. 265, at 2).  Plaintiffs, however, have not directly addressed their IDEA claims in their Supplemental Brief on Pending Issues.  Although a portion of defendants' filing argued that plaintiffs' IDEA claims are legally insufficient, plaintiffs only

responded by listing the IDEA claim—along with the Rehabilitation Act claim, the ADA claim, and the Fourteenth Amendment claims—as a viable claim based on prior briefing without further specification.

Because the Tenth Circuit was unclear as to the bases of plaintiffs' IDEA claims, noting that they would be valid only if certain conditions were met, and the stipulation identified IDEA claims as a topic of supplemental briefing, plaintiffs' omission of any additional argument in this summary judgment context about the IDEA claims could be considered abandonment of those claims. *See Jones v. Rent-A-Center, Inc.*, 240 F. Supp. 2d 1167, 1175 (D. Kan. 2002) (citing *Ratts v. Bd. of County Comm'rs*, 141 F. Supp. 2d 1289, 1314 (D. Kan. 2001) for finding abandonment of a claim where a plaintiff failed to respond adequately to a defendant's motion for summary judgment). Similarly, plaintiffs' statement that they "simply adopt and reincorporate [their prior memoranda] by reference" on an issue that was identified as unclear by the Tenth Circuit and contested by a stipulation is inadequate. *See Seabolt v. Hous. Auth. of City of Lawton, Okla.*, No. 97-6180, 1998 WL 47224, at *2 (10th Cir. Feb. 6, 1998) ("[I]t is not the court's duty to 'sift through' the record to find support for plaintiff's arguments . . . ."). Moreover, the remanded IDEA claims—that the state-court suit constitutes an injury under the IDEA and that the state-court suit violated the IDEA independently of the denial of a due-process hearing—require updated briefing that incorporates references to the resolution of the state-court suit. As a result, the court finds that plaintiffs do not have any remaining viable IDEA claims.

## C.    Declaratory Judgment

Plaintiffs also attempt to assert claims for declaratory judgment, specifically under the Rehabilitation Act and the ADA. Defendants argue that declaratory judgment is inappropriate because R.L. is deceased, and J.L. has graduated from high school. "While a declaratory judgment is

generally prospective relief, in some situations it has been recognized as retrospective." *PeTA,*

*People for the Ethical Treatment of Animals v. Rasmussen,* 298 F.3d 1198, 1202, n.2 (10th Cir.

2002) (citing *F.E.R. v. Valdez,* 58 F.3d 1530, 1533 (10th Cir. 1995)).  In a situation where the claim

for declaratory relief is similar to a claim for damages and the claim requires the court to determine

whether a past constitutional violation occurred, the court considers declaratory relief to the extent

that it is "intertwined with" the claim for monetary damages.  *Id.*  The Tenth Circuit has noted,

however, that in such situations, the declaratory relief is "'superfluous in light of the damages

claim.'" *Id.* (citing *Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997)).

Here, the declaratory judgment claims are superfluous and no longer viable.  The Tenth

Circuit mandate instructed this court to stay the proceedings for the vacated-judgment claims for

damages, and to dismiss without prejudice the remaining vacated claims.  Accordingly, this court

entered an order staying "plaintiffs' claims for damages . . . pending resolution of the state court

action" and dismissing without prejudice "the remaining vacated claims."  (Doc. 258, at 1–2).

Claims for declaratory relief are not claims for damages.  Thus, the court already dismissed

plaintiffs' declaratory relief claims.

**D.     Standing to challenge the nonresident admissions policy**

Plaintiffs base their Rehabilitation Act, ADA, and part of their Fourteenth Amendment

claims on defendants' nonresident admissions policy.  Previously, this court dismissed these claims

because plaintiffs lacked standing to challenge defendants' nonresident admissions policy.  (Doc.

168, at 53).  Plaintiffs lacked standing because the court noted, "plaintiffs do not contend they have

applied to the district for admission under the nonresident admissions policy." *Id.* at 52.  Because

they did not apply pursuant to the policy, defendants never denied them admission pursuant to the

policy.  As a result, they did not suffer an injury pursuant to the policy. *Id.*  This decision was

overruled on other jurisdictional grounds.

Presently, defendants provide a declaration that states a search of a database containing all of the applications for nonresident admission during the applicable time does not contain an application by plaintiffs. Without support or argument, plaintiffs controvert defendants' conclusion that "no application for nonresident admission . . . has ever been filed on behalf of [plaintiffs]." (Doc. 268, at 1). At this stage, plaintiffs' unsupported challenge is insufficient to meet their burden. *See* Fed. R. Civ. P. 56 (e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."). Plaintiffs' unsupported assertions—"it is clear from the facts presented in prior memoranda that Plaintiffs did apply for admission to the school district and that they were specifically told they would not be admitted under the non-resident policy" (Doc. 271, at 2)—are similarly insufficient. It is not the court's duty to scour the evidence to create and complete plaintiffs' arguments. *See Ames v. Uranus, Inc*., No. 92-2170-JWL, 1994 WL 482626, at *30 n.23 (D. Kan. Aug. 24, 1994) ("It is not the court's role, nor is it proper for the court, to try to decipher what evidence in the record . . . supports plaintiffs' claims."). Consequently, the court considers plaintiffs' Rehabilitation Act and ADA claims with the understanding that plaintiffs never applied for nonresident admission.

Plaintiffs' arguments regarding these claims also seem to be from the perspective that they did not apply for nonresident admission. Plaintiffs begin their argument with the statement, "It is true that throughout this litigation plaintiffs have asserted and continue to assert that they were residents of the defendant school district. However, assuming *arguendo* that they were not residents, their rights were still violated by defendants' conduct." (Doc. 269, at 2).

-10-

To show Article III standing, which is necessary for this court to have jurisdiction over plaintiffs' claims, plaintiffs must "have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Habecker v. Town of Estes Park, Colo.* 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Thus, plaintiffs' claims that are raised for the sake of argument are hypothetical and do not assert an injury in fact. Consequently, plaintiffs lack Article III standing to assert their Rehabilitation Act and ADA claims, and this court lacks jurisdiction over those claims. Those claims are dismissed.

**E.      § 1983 claims**

Lastly, plaintiffs assert claims under 42 U.S.C. § 1983 for violation of plaintiffs' Fourteenth Amendment rights to equal protection and substantive due process. Plaintiffs allege that defendants' actions interfered with their rights to travel, maintaining a residence of their choice, and education, and treated them differently based on their disabilities. The court addresses each of these in order.

**1.      Right to Travel**

First, plaintiffs' contention that they have a federally-protected fundamental right to travel fails. Plaintiffs have not alleged any limitation to their interstate travel. While plaintiffs argue that the right to travel applies to intrastate travel as well, relying upon a Kansas Supreme Court—*Manzanares, et. al. v. Bell*, 214 Kan. 589, 600 (1974) ("[w]e agree that freedom to travel throughout this state and the nation is a fundamental right.")—the Supreme Court has directly rejected this argument. *See Bray v. Alexandrea Women's Health Clinic*, 506 U.S. 263, 277 (1993) ("[A] purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other States, unless it is applied *discriminatorily* against [travelers from other States].") (emphasis in original).

## 2.     Right to Maintain a Residence

Second, plaintiffs have not provided any argument or support for their assertion that "[b]ased on Kansas law, there is no question that plaintiffs have a constitutionally protected interest in . . . maintaining a residence of their choice."  (Doc. 269, at 9).  Even assuming that plaintiffs could support this assertion, a protected interest "based on Kansas law" does not create an actionable § 1983 claim.  *See Franz v. Lytle*, 791 F. Supp. 827, 834 (D. Kan. 1992) ("[S]ection 1983 redresses the infringement of federal, not state, rights.").  The court dismisses plaintiffs' § 1983 claims relying on the right to maintain a residence of their choice.

## 3.     Right to Education

Regarding plaintiffs' right to education, the Tenth Circuit has noted,  "While the Supreme Court has made clear the right to a public education is not a fundamental right . . . the Supreme Court has not decided whether a state created property right like the right to a public education triggers substantive due process guarantees."  *Butler v. Rio Rancho Public Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 n.3 (10th Cir. 2003).  Other courts in this district have analyzed substantive due process claims based on a right to education by considering "whether the government action is rationally related to a legitimate government interest."  *James v. Unified Sch. Dist. No. 512*, 899 F. Supp. 530, 534 (D. Kan. 1995).

Plaintiffs attempt to raise this level of scrutiny by citing plaintiffs' disabilities.  Disabled persons, however, "'do not constitute a 'suspect class' for purpose of equal protection analysis.'" *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) (quoting *Hansen v. Rimel*, 104 F.3d 189, 190 n.3 (8th Cir. 1997)).  As a result, rational basis remains the appropriate standard of review for the equal protection claims as well.  *Id.*  ("We therefore apply the rational basis test, upholding the policy 'if there is any reasonably conceivable state of facts that could provide a rational basis for the

-12-

classification.' *Spragens v. Shalala*, 36 F.3d 947, 951 n.3 (10th Cir. 1994)").

Because the levels of review for plaintiffs' substantive due process claims and equal

protection claims are identical and plaintiffs lump the allegations of defendants' actions together, the

court analyzes the claims together.  Plaintiffs' supplemental filings are unclear as to what actions

defendants took to violate plaintiffs' rights.  To the extent plaintiffs allege that defendants'

nonresident admissions policy violated plaintiffs' rights, plaintiffs lack standing to bring those

claims for the same reasons plaintiffs lack standing for the Rehabilitation Act and ADA claims.  To

the extent that plaintiffs allege that defendants' actions related to the state case violate plaintiffs'

rights, defendants' actions were rationally related to a legitimate government interest.  While the

right to pursue a claim in court "is neither absolute nor unconditional and there is no constitutional

right of access to the courts to prosecute an action that is frivolous or malicious," plaintiffs have not

alleged that the state court action was frivolous or malicious.  *Sieverding v. Colo. Bar Ass'n*, 469

F.3d 1340, 1343 (10th Cir. 2006) (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989)).

Plaintiffs' supplemental filings do not address how the state court action affected their Fourteenth

Amendment rights, nor do they specify where such discussion could be found in the record.  As

stated, it is not the court's duty to scour the evidence to create and complete plaintiffs' arguments.

The court grants defendants' request for summary judgment on plaintiffs' § 1983 claims.

Plaintiffs waived their procedural due process claims and abandoned the IDEA claims.  The

court previously dismissed plaintiffs' declaratory judgment claims.  The court dismisses the

Rehabilitation Act and ADA claims for lack of standing.  The court grants summary judgment for

defendants on plaintiffs' § 1983 claims.  As a result, plaintiffs do not have any remaining viable

claims in this case.

**IT IS THEREFORE ORDERED** that defendants' request for summary judgment on

plaintiffs' IDEA claims is granted.

**IT IS FURTHER ORDERED** that plaintiffs' Rehabilitation Act and ADA claims are dismissed.

**IT IS FURTHER ORDERED** that defendants' request for summary judgment on plaintiffs' § 1983 claims is granted.

Dated this 3rd day of September 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
